```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
```

JATINDER KUMAR                  :
                                :
    v.                          :   Civil Action No. DKC 24-799
                                :
HARVEY DIKTER, President        :
                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Medicare coverage dispute is the motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56(a) filed by the United States Department of Health and Human Services ("HHS" or the "Government") on behalf of Defendant, Harvey Dikter, President, Novitas Solutions, Inc. ("Mr. Dikter"). (ECF No. 12). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion, treated as a motion for summary judgment, will be granted.

I.   Background[1]

   A. Factual Background

Plaintiff, proceeding *pro se*, brings this action against Mr. Dikter, President of Novitas Solutions, Inc. ("Novitas"). Novitas is a Medicare Administrative Contractor ("MAC") that processes Medicare claims and payments for eligible Medicare services. Novitas processes both Medicare Part A and Part B claims for beneficiaries who receive covered Medicare services within the state of Maryland. (ECF No. 12-3 ¶ 6). During 2022 and 2023, Novitas did not process home health care services claims for Medicare beneficiaries. (*Id.*). The Centers for Medicare & Medicaid Services ("CMS") is the federal agency within HHS that provides health coverage for eligible persons.

On June 16, 2022, Plaintiff's wife was released from Suburban Hospital ("Suburban") and transported home. (ECF No. 4, at 1). Plaintiff's wife had to be transported to and from their home in order to receive radiation treatments. On June 28, 2022, the attending physician recommended 24-hour home health care services for Plaintiff's wife. (ECF No. 4-1, at 7). Plaintiff hired CarePlus, Inc. to provide the necessary home health care services. (ECF No. 4-1, at 8-9). Plaintiff's wife passed away on July 14, 2022. (ECF No. 4, at 1).

---

[1] Unless otherwise noted, the following facts are undisputed.

On October 3, 2022, Plaintiff sent a letter to Novitas, seeking reimbursement for two claims: (1) $2,620.68 for the ambulance transportation costs incurred in transporting his wife from their home to radiation treatments, and (2) $7,917.00 incurred in providing home health care services for his wife. The total amount requested was $10,537.68. Plaintiff submitted with his letter: (1) a CMS-1490S Medicare Claim form; (2) a doctor's letter recommending home health care services; (3) copies of the invoices in support of his claims; and (4) copies of his wife's Medicare Card and Supplemental Insurance by Mutual of Omaha. (ECF Nos. 4-1, at 5-6; 12-3, at 76-97). On October 12, 2022, Novitas responded to Plaintiff, explaining that his CMS-1490S claim was received but that "according to Mandatory Claim Submission requirements," a doctor was required to submit the claim on his behalf. (ECF No. 12-3, at 35-39).

On November 30, 2022, Plaintiff sent another letter to Novitas with: (1) a copy of his October 3, 2022 letter; (2) a signed and completed CMS-1049S Medicare Claim; (3) a copy of Novitas' letter dated October 12, 2022; (4) charges for each of the services; and (5) documents showing ambulance services provided from his home to his wife's radiation therapy. (ECF No. 4-1, at 4). Plaintiff offered to provide any additional documents and requested payment in the amount of $10,537.68. On December 15, 2022, Novitas again

responded that a doctor would need to submit the Medicare claims on Plaintiff's behalf. (ECF No. 12-3, at 66-70).

On January 25, 2023, Plaintiff sent a letter containing CMS-1049S Medicare Claim and all other documents directly to Mr. Dikter. Plaintiff requested that Novitas approve his claims and reimburse him. (ECF No. 4-1, at 2).

On February 8, 2023, Plaintiff emailed Jasmyn Davis ("Ms. Davis"), a Provider Relations Research Specialist for Novitas, the documents relating to his Medicare claims. (ECF No. 12-3, at 104-05). Ms. Davis responded the same day to inform Plaintiff that Lifestar Response of Maryland ("Lifestar"), the ambulance provider, was required to submit a claim on his behalf. (ECF No. 12-3, at 103-04). Ms. Davis further stated that she spoke with an agent of Lifestar, and that Lifestar agreed to "submit the claim for services rendered on June 30, 2022, July 1, and 5, 2022." (ECF No. 12-3, at 103). Ms. Davis told Plaintiff that Lifestar needed a copy of the Physician Certification Statement from Plaintiff's wife's attending physician to submit the claims. (*Id.*).

On April 27, 2023, Plaintiff responded that he was able to contact the attending physician, but due to personal reasons, she was out of the hospital and could not provide documentation in support of Plaintiff's claim for ambulance services. (ECF No. 12-3, at 102-03). Plaintiff requested that Ms. Davis process his

4

home health care services claim in the meantime. (*Id.*). Ms. Davis informed Plaintiff that CGS Administrators, LLC ("CGS") was the MAC who processed home health care services claims, not Novitas, and that Plaintiff would need to contact CGS for his home health care services claim. (*Id.* at 102). Plaintiff requested a contact at CGS and Ms. Davis told him she did not have one. (*Id.* at 101-02). Plaintiff never submitted a claim to CGS. (ECF No. 12-2 ¶ 3-4).

On May 4, 2023, Plaintiff sent a letter to Mr. Dikter stating that Ms. Davis advised that he needed to get a letter from his wife's attending physician stating that Suburban could not provide ambulance services to the clinic where she was going to receive radiation therapy after her release from Suburban. (ECF No. 4-1, at 3). Plaintiff explained that the attending physician, for personal reasons, was unable to provide the requested letter and that Plaintiff was waiting for the President of Suburban to respond to him and provide the needed documentation. (*Id.*). Plaintiff requested reimbursement for the home health care services costs in the interim.

On July 26, 2023, Plaintiff again wrote Mr. Dikter to inform him that he believed Novitas was going to reimburse him for his payment of $2,620.68. (ECF No. 4-1, at 1). Plaintiff requested that Novitas pay the remaining $7,917.00 by August 15, 2023, otherwise he would commence legal action. Novitas paid Plaintiff

$2,620.68 for ambulance services, but it never paid the $7,917.00 for home health care services. (ECF No. 4, at 1).

Since 2011, CGS has been the exclusive MAC for home health care services claims for care provided in Maryland. (ECF No. 12-2 ¶ 5). Patricia Elizer ("Ms. Elizer"), CGS's Director of Technical Services and Claims, ordered a search of CGS's claims processing system for claims made behalf of Plaintiff's wife and did not find any home health care Medicare claim for her. (*Id.* ¶ 3). Ms. Elizer also searched CGS's workflow system for any beneficiary correspondence related to home health care services provided to Plaintiff's wife and did not find any correspondence. (*Id.* ¶ 4).

### B. Procedural Background

On February 7, 2024, Plaintiff commenced this action in the District Court of Maryland for Montgomery County, Maryland. On March 18, 2024, the Government filed a notice of removal pursuant to 28 U.S.C. § 1442(a)(1) on the ground that CMS, as an agency of HHS, is the real party of interest in this case. (ECF No. 1). On July 1, 2024, the Government moved to dismiss the complaint, or in the alternative, for summary judgment. (ECF No. 12). Plaintiff opposed the motion on July 26, 2024 (ECF No. 14). The Government replied to Plaintiff's opposition on August 9, 2024 (ECF No. 15), and Plaintiff responded on August 21, 2024 (ECF No. 16).

6

**II.  Standard of Review**

The Government styled its motion as a motion to dismiss under Fed.R.Civ.P. 12(b)(6), or in the alternative, for summary judgment under Fed.R.Civ.P. 56(a).[2]  Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion to dismiss.  *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed.R.Civ.P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").  The parties have had the opportunity fully to brief the issues, and the Government has provided declarations which are

---

[2] The Government also argues that the court lacks subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).  (ECF No. 12-1, at 5-6).  The exhaustion requirement of 42 U.S.C. § 405(g), however, is mandatory, but not jurisdictional. *Accident, Injury & Rehab., PC v. Azar*, 943 F.3d 195, 200 (4th Cir. 2019).

necessary to resolve this matter.  Accordingly, the Government's motion will be treated as one for summary judgment.

A court will grant a motion for summary judgment when there is no genuine dispute of a material fact, and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden to demonstrate the absence of a genuine dispute of material fact.  *Med. Mut. Ins. Co. of N.C. v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citing *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)).  If it meets this burden, the burden then shifts to the non-movant to show specific facts demonstrating a genuine issue for trial.  *Id*. A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

A material fact is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

**III. Analysis**

Under Medicare's regulations, because "[i]ntermediaries and carriers act on behalf of CMS in carrying out certain

8

administrative responsibilities that the law imposes . . . CMS is the real party of interest in any litigation involving the administration of the program." 42 C.F.R. § 421.5(b). "Ideally, in a case against a private contractor serving as a MAC, the Government would formally enter the case, either through a motion for joinder by the MAC or a motion to intervene," but neither is "necessary for the Government to be considered the real party of interest." *L. Off. of Mark Kotlarsky Pension Plan v. Hillman*, No. 14-3028-TDC, 2015 WL 5021399, at *3 (D.Md. Aug. 21, 2015). Where it is clear that the MAC is acting as the agent for the Government, the Government is a real party in interest. *Id.* (citing *Johnson v. Johnson*, 332 F.Supp. 510, 513 (E.D.Pa. 1971); *see also Dugan v. Rank*, 372 U.S. 609, 620 (1963) ("[A] suit is against the sovereign if the judgment sought would expend itself on the public treasury.") (citation and internal quotation marks omitted)). Accordingly, the Government is a proper party in this case.

### A. Failure to Exhaust Administrative Remedies

The Government argues that Plaintiff failed to exhaust his administrative remedies.[3]

Plaintiff challenges Novitas' "denial" of his requested Medicare benefits. This type of claim arises under the Social

---

[3] The Government also argues that Plaintiff's claim fails on the merits because the home health care company he used is not enrolled as a Medicare provider. (ECF No. 21-1, at 2, 17; ECF No. 12-4 ¶ 3.) It will not be necessary to reach that argument.

Security Act, because the Medicare Act so specifies. *See Straw v. U.S. Ctrs. for Medicare Servs.*, 2020 WL 7239965, at *2 (D.Md. Dec. 9, 2020) (citing *Shalala v. Ill. Council on Longer Term Care, Inc.*, 529 U.S. 1, 10 (2000)). This court has explained:

> A claim arises under the Social Security Act when that statute provides "both the standing and the substantive basis for" the claim, regardless of whether the claim also arises under other statutes or constitutional guarantees. *See Heckler v. Ringer*, 466 U.S. 602, 615, 620 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975); *Buckner v. Heckler*, 804 F.2d 258, 259 (4th Cir. 1986). Section 405(g) of the Social Security Act, made applicable to the Medicare Act by 42 U.S.C. § 1395ii, permits judicial review of such claims only after a "final" agency decision. *See* 42 U.S.C. §§ 405(g)-(h), 1395ii.

*Id.* Thus, a plaintiff must first receive a final agency decision before seeking judicial review of a Medicare claim.

Before an agency decision can be rendered, a claimant must submit a Medicare claim. A Medicare claim must be filed with the proper MAC:

> (1) A claim must be filed with the appropriate intermediary or carrier on a form prescribed by CMS in accordance with CMS instructions.

42 C.F.R. § 424.32(a).

The Government asserts that Plaintiff never properly submitted a claim for home health care services because he never filed his claim with the appropriate MAC, CGS. Plaintiff submitted his claim for home health care services to Novitas, but, as Novitas

told him, it did not handle home health care services claims. (ECF No. 12-3, ¶ 6). Instead, CGS was the proper MAC for his home health care services claim (ECF No. 12-3, at 102), but Plaintiff never submitted his claim to CGS. (ECF No. 12-2 ¶¶ 2-5). Novitas neither reviewed nor denied Plaintiff's claim for home health care services, and is not the proper MAC for this suit. Because Plaintiff never submitted his claim to CGS, his claim was never reviewed by CGS and therefore it was never denied. (*Id.* at ¶ 3). Plaintiff did not begin the administrative process for his home health care services claim, let alone exhaust his administrative remedies.

Accordingly, the Government's motion for summary judgment must be granted and the action will be dismissed for failure to exhaust administrative remedies.

**IV. Conclusion**

For the foregoing reasons, the Government's motion, treated as a motion for summary judgment, will be granted. A separate order will follow.

                                            /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge